UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROWE PLASTIC SURGERY OF NEW JERSEY,
L.L.C. and EAST COAST PLASTIC SURGERY, P.C.,

                  Plaintiffs,                **MEMORANDUM
AND ORDER**

        v.                                23-CV-3632-SJB-LKE

AETNA LIFE INSURANCE COMPANY,

                  Defendant.
-------------------------------------------------------------------X

**BULSARA, United States District Judge:**

       This is one of dozens of similar cases filed by Rowe Plastic Surgery of New

Jersey, L.L.C. and East Coast Plastic Surgery, P.C. (collectively "Plaintiffs") in this and

other district courts seeking reimbursement from health insurance companies for

surgeries performed.  Plaintiffs allege that on phone calls, Aetna Life Insurance

Company ("Aetna" or "Defendant") promised to reimburse them 80% of a "reasonable

and customary" amount for those surgeries, and that Aetna breached these oral

contracts.  This Court previously stayed this case pending the resolution of two appeals

before the Second Circuit.  Those appeals have now been decided.  *See Park Ave.

Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, No. 23-CV-1134, 2024 WL 2813721

(2d Cir. June 3, 2024) [hereinafter *Park Ave.*]; *Rowe Plastic Surgery of New Jersey, L.L.C. v.

Aetna Life Ins. Co.*, No. 23-CV-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) [hereinafter

*Rowe II*].  Now pending is Plaintiffs' motion to amend the Complaint, *i.e.* an attempt to

cure deficiencies identified in those decisions.  (*See* Pls.' Mem. of Law in Supp. of Mot.

to Amend dated Dec. 2, 2024 ("Pls.' Mem."), Dkt. No. 17-2).  Aetna opposes the

amendment on futility grounds.  (*See* Def. Aetna Life Insurance Company's Mem. of Law Opposing Mot. for Leave to Amend Compl. dated Jan. 17, 2025, Dkt. No. 17-5).  For the reasons that follow, Plaintiffs' motion to amend is denied and the parties are ordered to proceed directly to summary judgment briefing.

<u>BACKGROUND</u>

Plaintiffs commenced this action in April 2023 in New York state court.  (Notice of Removal dated May 16, 2023, Dkt. No. 1 at 1).  The case is one of several dozen such actions, pending in the Southern and Eastern Districts of New York, that allege that insurance companies, including Aetna, allegedly failed to provide full reimbursement for bilateral breast reduction surgeries performed by Plaintiffs.  (Compl. dated Apr. 6, 2023 ("Compl."), Dkt. No. 1-1 ¶ 3–4).

The original Complaint in this case alleged that Plaintiffs called Aetna to confirm whether it would provide out-of-network coverage for surgery for a patient ("RS") in late December of 2020.  (Compl. ¶¶ 27–32).  An Aetna employee allegedly represented on the call that it would cover 80% of the "reasonable and customary [fee] for covered services rendered."  (*Id.* ¶ 32).  This case, and the approximately 30 other similar lawsuits, are based on the same theory: phone calls confirmed that the insurance company would pay at least 80% (in some instances 90%) of a reasonable and customary fee, and the conversations created enforceable contracts that were breached. *Rowe v. Aetna Health & Life Ins. Co.*, No. 22-CV-9427, 2025 WL 618556, at *1 (S.D.N.Y. Feb. 25, 2025); *see also, e.g.*, *Rowe Plastic Surgery of New Jersey, L.L.C. v. United Healthcare*, No. 23-CV-4352, 2024 WL 4309230, at *2–*3 (E.D.N.Y. Sept. 26, 2024).

This case was stayed in early 2024, pending appeals of dismissal orders issued in two cases with similar allegations.  (Order dated Jan. 29, 2024).  Those appeals were decided by the Second Circuit on June 3, 2024, and September 27, 2024; the Second Circuit affirmed the dismissal of the lawsuits.  *Park Ave.*, 2024 WL 2813721, at *3; *Rowe II*, 2024 WL 4315128, at *5.  On September 27, 2024, this Court ordered the parties to file letters addressing "the effect, if any, of the Second Circuit's decision" on the present case.  (Order dated Sept. 27, 2024).  Both parties filed letters on October 11, 2024.  (Letter Regarding the Effect of the Second Circuit Decision by Aetna dated Oct. 11, 2024, Dkt. No. 9; Letter Regarding the Effect of the Second Circuit Decision by Plaintiffs dated Oct. 11, 2024, Dkt. No. 10).  Plaintiffs subsequently requested permission from this Court to file an amended complaint.  (Letter Req. for Permission to File Am. Compl. dated Oct. 29, 2024, Dkt. No. 13).  The Court directed briefing on the request on November 14, 2024.  (Order dated Nov. 14, 2024).  The fully briefed motion was filed on January 29, 2025.  (Notice of Mot. dated Dec. 2, 2024, Dkt. No. 17).

Plaintiffs' proposed Amended Complaint contains several changes from the original pleading.[1]  Plaintiffs removed the entire introduction and components of the original "Factual Allegation" section that provided background.  (Proposed Am. Compl. – Redline ("Redline"), attached as Ex. 1 to Aff. of Brendan J. Kearns, Dkt. No.

---

[1] The proposed Amended Complaint fails to identify the individual claims, all of which are titled simply "Cause of Action," *e.g.*, "First Cause of Action," (Proposed Am. Compl., attached as Ex. 2 to Aff. of Brendan J. Kearns, Dkt. No. 17-3 at 2), so the Court infers—based on the original Complaint, the proposed Amended Complaint, and the brief in support of amendment, (Pls.' Mem. at 10–15)—that these claims are for breach of contract, unjust enrichment, promissory estoppel, and newly added claims for fraudulent inducement and conversion.

17-4 at 1–5).  They also added information to "Parties," presumably to help the Court assess subject matter jurisdiction.  (*See id.* at 4–6; Proposed Am. Compl. ¶¶ 1–9).  Plaintiffs now provide background facts—such as the allegation about the phone call and the "80% reasonable and customary" fee owed—in the "FIRST CAUSE OF ACTION" allegations.  (Redline at 7–13; Proposed Am. Compl. ¶¶ 12–31).

Generally, in the first three causes of action of the proposed Amended Complaint, Plaintiffs add new factual allegations to try to strengthen their contract-based claims.  (Proposed Am. Compl. ¶¶ 12–88).  For instance, Plaintiffs now allege that Aetna was obligated to use a database—"FAIRHealth"—to determine the "reasonable and customary" fee for the breast reduction surgeries, yet failed to do so.  (*Compare* Compl. ¶ 26 *with* Proposed Am. Compl. ¶¶ 27–29, 71–73, 95, 97).  Plaintiffs also allege additional phone calls with Aetna between September 29, 2020 and September 2, 2021, which demonstrate that Aetna knew Plaintiffs were relying on its representations about paying a "80% reasonable and customary" fee.  (*Compare* Compl. ¶¶ 29–32 *with* Proposed Am. Compl. ¶¶ 77–83).  Additionally, Plaintiffs add allegations of a "re-pricing" scheme in the second cause of action—unjust enrichment—that suggests Aetna was unjustly enriched by receiving fees from a Pricing Vendor with which it contracted to determine how much was to be paid for surgery.  (Proposed Am. Compl. ¶¶ 39, 52–65).  At bottom, however, Plaintiffs' first three causes of action are essentially unchanged from the original Complaint: they all still rely on the initial alleged phone call(s) as the source of the "promise" that is the core of each claim.  (*E.g.*, *id.* ¶¶ 18, 34, 88, 90).

Plaintiffs also add two new claims and remove a claim for violation of the New York Prompt Pay Law. (Redline at 23–27). One new claim—"Fourth Cause of Action," suggesting fraudulent inducement—generally relies on the same alleged facts as the first three claims, with the phone call as the source of alleged wrongdoing. (Proposed Am. Compl. ¶¶ 89–103). But this claim also includes new allegations that Aetna developed a "scheme to induce the Plaintiffs into rendering surgery to RS" through its representations on that phone call. (*Id.* ¶ 100; *see also id.* ¶¶ 90–92). Plaintiffs' other new claim—"Fifth Cause of Action," suggesting conversion—alleges that Aetna wrongfully retained the remainder of the cost of the surgery that was not paid ($91,032.12). (*Id.* ¶¶ 104–10).

As explained below, the Second Circuit's decisions—in cases brought by the same law firm on behalf of the same or similarly situated plaintiffs against insurance companies (one of whom is Aetna), based upon nearly indistinguishable allegations— demonstrate that the claims in the Amended Complaint are preempted by the Employee Retirement Income Security Act ("ERISA"), and if not preempted, fail as a matter of law under state law. And, furthermore, they suggest that the Plaintiffs' current claims, in the operative Complaint, are barred for the same reason.

## DISCUSSION

We begin with the futility of the proposed Amended Complaint. Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); 6 Charles Alan Wright & Arthur R. Miller et al.,

Federal Practice and Procedure § 1480 (3d ed. 2010) ("When this time period expires or the party already has amended the pleading, [amendment as of right] no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party."); *e.g.*, *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 12329546, at *2 (E.D.N.Y. Sept. 18, 2013).

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting prior version of Fed. R. Civ. P. 15(a)(2)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

However, a "motion to amend will be considered futile if the Court determines, 'as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 61 (E.D.N.Y. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)) (adopting report and recommendation); *see also, e.g.*, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 260 (2d Cir. 2002) (reversing the district court's order granting plaintiff leave to amend complaint where his proposed new claim "[wa]s barred by substantive contract law"). Futility may also exist because of the preemptive force of federal law, including ERISA. *Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 160 (E.D.N.Y. 2013) ("[T]he proposed [state

law] claim is preempted under ERISA and must be rejected as futile."); *see also, e.g.*, *Gayle v. Pfizer Inc.*, 452 F. Supp. 3d 78, 89 (S.D.N.Y. 2020) (holding that plaintiff's proposed claims were preempted by the Food, Drug, and Cosmetic Act), *aff'd*, 847 F. App'x 79, 80 (2d Cir. 2021).

The claims in the proposed Amended Complaint are futile for two reasons: they are either preempted by ERISA, and if not preempted, fail under New York law.

A.  ERISA Preemption

ERISA preempts any state law that "relate[s] to any [ERISA] employee benefit plan."  29 U.S.C. § 1144(a); *see District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 127 (1992).  Because this preemption clause is "clearly expansive," *Off. Create Corp. v. Planet Ent., LLC*, -- F.4th --, No. 24-CV-1879, 2025 WL 1634970, at * 4 (2d Cir. Jun. 10, 2025) (quotations omitted), "state laws that would tend to control or supersede central ERISA functions . . . have typically been found to be preempted." *Id.* (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003)).  To that end, "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987) (finding common law causes of action related to employee benefit plans were preempted by ERISA unless they fell under a statutory exception).

A state law "relate[s] to" an ERISA benefit plan when "it has a connection with or reference to such a plan," *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)

(quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)), or when "the existence of [an ERISA] plan is a critical factor in establishing liability." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139–40 (1990); *see also Off. Create Corp.*, 2025 WL 1634970, at *4.

In *Park Ave.*, a suit brought by the same counsel as in this case, plaintiff Park Avenue Podiatric Care, P.L.L.C. ("PAPC") alleged that it performed foot surgeries on patient "SS," a beneficiary of an employee health benefit administered by Cigna Health and Life Insurance Company ("Cigna"). *Park Ave.*, 2024 WL 2813721, at *1. PAPC alleged a Cigna representative stated on a pre-surgical phone call that "payment for covered services rendered to SS was based upon 80 percent of the customary rate," but PAPC was ultimately paid far less than 80% of the billed amount. *Id.* PAPC asserted various claims under state law, arguing that such claims arose from a "separate legal duty that arose from the commitment Cigna made to PAPC during the pre-surgery phone calls." *Id.* at *2 ("PAPC seeks to collect more money from Cigna for the services rendered to SS because it believes that it was underpaid based on the industry's customary rate, and uses causes of action under New York state common and statutory law as the vehicle to seek remedy.").

The Second Circuit affirmed the district court's finding that these claims were preempted by ERISA. *Park Ave.*, 2024 WL 2813721 at *2. It noted that the reason plaintiff was communicating with Cigna was because Cigna was the ERISA plan administrator, and Cigna determined how much the ERISA plan paid for "out-of-network" providers for services. *Id.* ("PAPC understood that if SS's ERISA-governed plan provides for out-of-network benefits, the extent of Cigna's obligations to PAPC

8

would be defined by the plan's terms."). Put differently, "the existence of [an ERISA plan] [wa]s a critical factor in establishing liability" for PAPC's alleged state law claims. *Id.* (quoting *Ingersoll-Rand Co.*, 498 U.S. at 139–40). And as a result, the claims were preempted. *Id.* ("[B]ecause any legal duty Cigna has to reimburse PAPC arises from its obligations under the patient's ERISA plan, and not from some separate agreement or promise, PAPC's claims are expressly preempted by ERISA[.]").

The same result follows here. The proposed Amended Complaint generally refers to the role Aetna plays in administering "health plan[s]" and the central role of the plan here. (Proposed Am. Compl. ¶¶ 3, 22, 49 ("RS's health plan")). The reason Plaintiffs called Aetna in the first instance was to ascertain payments that would be made under RS's ERISA plan. The monies that Plaintiffs did receive were by dint of RS's ERISA plan (because Plaintiffs were an out-of-network provider seeking payment for benefits covered by the plan). Otherwise, Plaintiffs would have no reason to contact (or sue) Aetna, whose role is to administer the ERISA plan. At its core, Plaintiffs' suit is one alleging that they expected—because of Aetna's allegedly false promise—RS's plan to pay more than they received. No matter how much this is dressed up in state law garb and additional facts, the claims grow out of what was (not) paid under an ERISA plan. The proposed Amended Complaint "presupposes the existence of a relationship between [insurer and insured] through a health insurance plan." *Park Ave.*, 2024 WL 2813721, at *3. Given that all of Plaintiffs' state law claims—whatever legal heading they fall under—relate to RS's ERISA plan, they are preempted. *E.g.*, *Jay Kripalani M.D., P.C. v. Indep. Blue Cross*, No. 23-CV-04225, 2024 WL 4350492, at *6 (E.D.N.Y. Sept. 30,

2024) (distinguishing medical provider plaintiff's claims as *not* preempted by ERISA—because there was a signed "letter agreement memorializing a [negotiated payment] contract that was independent of the plan that existed between the insurance company and the patient"—from other cases where ERISA preemption applied "because all of the claims were based on the healthcare plan"); *Neurological Surgery, P.C. v. Siemens Corp.*, No. 17-CV-3477, 2017 WL 6397737, at *5 (E.D.N.Y. Dec. 12, 2017) ("As the Plaintiff's contractual, quasi-contractual, and unjust enrichment claims all seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA, they are preempted by ERISA[.]" (citations and quotations omitted)).[2]

Plaintiffs contend that "the amended pleadings bases liability entirely on the parties' course of conduct" and not the ERISA plan (an argument they also use as the

---

[2] Plaintiffs argue that *Park Ave.* is not binding precedent. (*See* Pls.' Mem. at 4). True, but irrelevant:

> Every lawyer knows that the ability to cite non-binding authority can be helpful. Such decisions can illustrate concrete examples of a rule's application, show that impartial judges have adopted reasoning similar to that being advanced by the advocate, or demonstrate the continuing validity of an old case. It is one thing to cite a binding precedent for a general proposition and argue to the court that the logic of the general proposition applies to the specific case before the court; it is quite another, and more persuasive, to be able to cite specific instances in which courts have in fact applied the general principle to cases closely resembling the instant case. If that were not so, parties would never cite district court or out-of-circuit appellate authority to a court of appeals.

*New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 223–24 (2d Cir. 2021). *Park Ave.* may not create a new legal rule that is applicable in all cases, but its logical force, using the general principle of ERISA preemption of state law and applied to a factual circumstance indistinguishable from the present case, compels the same result.

basis for contending the Court cannot consider the plan documents on this motion).[3]

(Pls.' Mem. at 4).  Not so.  As in *Park Ave.*, Plaintiffs would not have reached out to

Aetna had it not first determined that Aetna was responsible for administering RS's

plan.  (Proposed Am. Compl. ¶¶ 3, 22).  The "course of conduct" revolved around what

was and what was not covered under RS's ERISA plan, (Proposed Am. Compl. ¶ 77; *see

also, e.g., id.* ¶¶ 14, 18, 22); simply refusing to use the word "ERISA" in the operative

Complaint, or the proposed Amended Complaint—and opting only to use the word

"plan"—cannot escape the breadth of ERISA's preemption clause.  The proposed

Amended Complaint mentions the "plan" (without referring to ERISA) eight times,

four of which explicitly refer to "RS's health plan."  (Proposed Am. Compl. ¶¶ 3, 22, 49,

55, 59–60, 64).  And, "[b]ecause the plan's terms and effects were relied upon in [the]

---

[3] Plaintiffs recycle a rejected argument made in *Park Ave.*—that the Court may not consider the plan document, one outside of the Amended Complaint, in evaluating this motion.  (Mem. of Law in Further Supp. of the Providers' Mot. to Amend dated Jan. 28, 2025 ("Pls.' Reply"), Dkt. No. 17-8 at 6).  On a motion to amend—which employs the same standard to evaluate futility as a motion to dismiss, *see supra* at 6 (discussing *Charlot*, 97 F. Supp. 3d at 61)—a court may consider any document incorporated by reference, "integral" to the complaint, or subject to judicial notice.  *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (quotations omitted).  As noted, the proposed Amended Complaint refers to a "plan" and "health plan" between RS and Aetna numerous times.  The only such plan at issue is an ERISA plan.  And like in *Park Ave.*, "whether [RS's] plan was an ERISA-regulated plan, and whether an out-of-network provider like [Plaintiffs were] the recipient of any duty under the plan, are threshold questions that rely on the terms of the plan and are necessary to resolve in order to advance [Plaintiffs'] challenge to the merits stage."  *Park Ave.*, 2024 WL 2813721, at *3.  Furthermore, Plaintiffs take the argument too far.  Even if the Court does not consider the "Plan Document" attached by Aetna, (Benefit Plan ("Plan Document"), attached as Ex. 1 to Decl. of Elizabeth C. Petrozelli, Dkt. No. 17-6), ERISA preemption does not require consideration of the contents of the Plan Document, but simply recognition that the claims asserted "relate" to an employee's ERISA plan.  And for the reasons explained, here they plainly do.

Amended Complaint, and integral to its adjudication, the Court considers the Plan Summary as incorporated by reference." *Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. UnitedHealthcare Serv., LLC*, No. 23-CV-0516, 2024 WL 4252045, at *3 (E.D.N.Y. Sept. 20, 2024) (citing *Park Ave.*, 2024 WL 2813721, at *3). This Plan Document states that RS's health plan is an ERISA plan. (Plan Document at 93–95[4]).

Plaintiffs rely on *Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc.*, 749 F. Supp. 3d 456 (S.D.N.Y. 2024), to contend its state law claims escape preemption. (*See* Pls.' Mem. at 9). In *Emergency Physician*, medical providers alleged that the defendants (UnitedHealth Group, Inc. and its subsidiaries and affiliates) failed to reimburse plaintiffs for emergency services provided to defendants' insured members. 749 F. Supp. 3d at 461–62. But the allegation did not rely exclusively on an ERISA plan, and the state claim (for unjust enrichment) did not seek "payment of specific benefits" under an ERISA plan. *Id.* at 468 (quoting *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 87 (2020)). The Court noted: "a state law doesn't 'relate to' an ERISA plan if it merely 'establishes a floor for the cost of the benefits that plans choose to provide'—so long as the law also 'does not require plans to provide any particular benefit to any particular beneficiary in any particular way.'" *Id.* at 470 (quoting *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250, 1259 (S.D. Fla. 2023)). That is not the case here: prevailing on the state law claims would permit Plaintiffs to

---

[4] Parts of the Plan Document lack pagination; these page numbers are in reference to the pages of the PDF.

recover specific plan benefits at a rate they prefer—beyond that which Aetna paid—and on the basis of the ERISA plan rates.

And importantly, *Emergency Physician* relied on and applied the Supreme Court's preemption framework from *Rutledge*, a case Plaintiffs also cite.  (*See* Pls.' Mem. at 7–10). But *Rutledge* has no application here.  *Rutledge* addressed ERISA preemption in the context of a statute regulating conduct between third party pharmacy benefit managers and pharmacies.  *Rutledge*, 592 U.S. at 84–85.  The Supreme Court held that the statute—regulating how pharmacies obtain and dispense drugs, and associated costs—was not preempted by ERISA because it applied *regardless* of whether an ERISA plan was implicated.  *Rutledge*, 592 U.S. at 88–89.  Here, the only reason why Aetna is a defendant, or why Plaintiffs contacted Aetna, is because of RS's ERISA plan.  Absent RS's ERISA plan, there would be no relationship between Plaintiffs and Aetna (and no payment to Plaintiffs, even if substantially less than what was expected).  *See Norman Maurice Rowe, M.D., M.H.A., L.L.C.*, 2024 WL 4252045, at *4 (holding that the state law claims were preempted by ERISA because "it is clear on the face of the Complaint that Plaintiff's claims derive from coverage determinations made pursuant to a health benefit plan regulated by ERISA [and] [t]he adjudication of each of Plaintiff's claims would require the Court to analyze the terms of the Plan to determine the benefits owed." (citations omitted)).

Finally, Plaintiffs cite to several other cases purporting to show that ERISA preemption is inapplicable, but that actually stand for the opposite proposition or are entirely inapposite.  For instance, *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312 (2016),

addressed a state law that required health insurers to report payments to the state, and which the Supreme Court found *was preempted* by ERISA.  577 U.S. at 326–27.  And *Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282 (S.D. Fla. 2021), is one of several out-of-circuit cases cited by Plaintiffs—but those cases are unpersuasive in the face of the Second Circuit's decision in *Park Avenue.  See supra* § A at 8–9.[5]

In this case, all five of the claims in the proposed Amended Complaint—and indeed all four of the claims in the operative Complaint—would "require payment of specific benefits" under an ERISA plan; and the relationship between the parties would not exist but for the presence of an ERISA plan, making it a "critical factor in establishing liability."  For these reasons, the claims are preempted by ERISA.[6]

---

[5] In their reply, Plaintiffs cite *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525 (5th Cir. 2009), to argue that benefit determinations are not regulated by ERISA when a payment amount is in dispute.  (Pls.' Reply at 8–9.)  But in *Lone Star*, the plaintiffs were in-network medical providers who brought their claims pursuant to a separate, clearly negotiated contract; *i.e.*, there was a legally independent duty.  579 F.3d at 529–30.  Nothing similar is present here.  Plaintiffs also rely on a Second Circuit decision that cites *Lone Star* "with approval," (Pls.' Reply at 9 (citing *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 331 (2d Cir. 2011)) (alteration omitted)), but that cannot cure the factual dissonance between *Lone Star* and the proposed Amended Complaint.

Finally, Plaintiffs cite *Long Island Thoracic Surgery, P.C. v. Bldg. Serv. 32BJ Health Fund*, No. 17-CV-0163, 2019 WL 7598669 (E.D.N.Y. Sept. 3, 2019), *report and recommendation adopted*, 2019 WL 5060495 (Oct. 9, 2019), to support their argument distinguishing "right to payment" from "amount of payment" for ERISA preemption purposes.  (Pls.' Reply at 9.)  This distinction does not help a plaintiff escape preemption when "the existence of [an ERISA plan] is a critical factor in establishing liability" against a defendant.  *Park Ave.*, 2024 WL 2813721, at *2 (quotations omitted).

[6] *See also, e.g.*, *Norman Maurice Rowe, M.D., M.H.A., L.L.C.*, 2024 WL 4252045, at *4; *Norman Maurice Rowe, M.D., M.H.A., LLC v. Aetna Life Ins. Co.*, No. 23-CV-6238, 2025 WL 692051, at *1–*2 (S.D.N.Y. Mar. 4, 2025), *appeal withdrawn sub nom. Rowe Plastic Surgery of*

B. <u>Infirmities under State Law</u>

Even if some, or all, of Plaintiffs' claims are not preempted by ERISA, each claim in the proposed Amended Complaint fails as a matter of state law—primarily for the reason that the oral conversation(s) alleged to have occurred cannot be considered a promise to pay on which Plaintiffs reasonably relied for any contract, or contract-related, claim.  Each claim fails as a matter of law largely for the same reasons that the Second Circuit affirmed in dismissing Plaintiffs' case in *Rowe II*.

If a proposed claim would not survive a Rule 12(b)(6) motion for failure to state a claim, it is futile.  *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  On a 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must contain more than "naked assertion[s] devoid of further factual enhancement."  *Id.* (quotations omitted).  In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.; see* Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true

---

*New Jersey, L.L.C. v. Blue Cross Blue Shield of N. Carolina*, No. 25-CV-539, 2025 WL 1625510, at *1 (2d Cir. Apr. 23, 2025), *and appeal withdrawn sub nom. Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. Aetna Life Ins. Co.*, No. 25-CV-537, 2025 WL 1603002, at *1 (2d Cir. Apr. 28, 2025).

(even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### 1.  Breach of Contract

Plaintiffs' first claim in their proposed Amended Complaint is for breach of contract.  (Proposed Am. Compl. ¶¶ 12–31).  In *Rowe II*, the Second Circuit evaluated a nearly identical case, brought by the same Plaintiffs, against the same Defendant, on a motion to dismiss.  *Rowe II*, 2024 WL 4315128, at *1.  There, the Circuit explained that "[a] valid contract requires 'an offer, acceptance, consideration, mutual assent, and an intent to be bound.'"  *Id.* at *2 (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).  "An offer must be sufficiently definite [ ] such that its unequivocal acceptance will give rise to an enforceable contract."  *Id.* (quotations omitted).

Plaintiffs allege that they "entered into an ad-hoc agreement" in which Aetna "orally assured" them that reimbursement "would be calculated using the '80% reasonable and customary' fee schedule."  (Proposed Am. Compl. ¶¶ 13–14.)  Plaintiffs allege the parties "reached an agreement" as to the price, the necessity of the surgery, the surgeons performing the procedure, and the location of the surgery.  (*Id.* ¶¶ 18–19).  In its opposition to the motion to amend, Aetna attached a transcript of the recording of the September 29, 2020, phone call, which the Court concludes is incorporated by reference by virtue of the allegations about the call in the Amended Complaint.  (Tr. of 9/29/2020 Phone Call ("Tr. of Sep. Call"), attached as Ex. A to Decl. of Adam J. Petitt,

16

Dkt. No. 17-7). *See also Rowe II*, 2024 WL 4315128, at *2 ("We agree that [the call transcript] is integral to the Amended Complaint and therefore also conclude that the district court did not err in considering it.").

Rather than suggesting that there was a new agreement reached between the parties, the transcript reflects an ordinary inquiry concerning benefits coverage for a particular patient—not an offer made by Aetna relied upon Plaintiffs:

> [Plaintiff's Employee]: And for the out of network, can I please have a fee schedule and the reimbursement rate, please?
>
> [Aetna Representative]: All right. So for the reimbursement rate, it's going to be 80 percentile of a reasonable, customary and rate.
>
> [Plaintiff's Employee]: I'm sorry, can you just repeat that one more time?
>
> [Aetna Representative]: Yes. It is -- it is 80 percent reasonable and customary.

(Tr. of Sep. Call at 5:23–6:07).

The allegation made by Plaintiffs here—that the "80% reasonable and customary" conversation constituted an offer—was rejected in *Rowe II*. In evaluating a virtually indistinguishable transcript—"defendant's employee checked and then responded, 'for the reimbursement rate, it's going to be 80 percent reasonable and customary,'" *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, 705 F. Supp. 3d 194, 203 (S.D.N.Y. 2023) [hereinafter *Rowe I*], *aff'd*, *Rowe II*, 2024 WL 4315128, at *5— the Court of Appeals concluded that the allegations "f[e]ll short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty." *Rowe II*, 2024 WL 4315128, at *3. And this

deficiency "eliminate[d] any uncertainty as to what a reasonable factfinder would conclude about whether this conversation created an actionable offer by Aetna." *Id.*

Plaintiffs make no attempt to distinguish *Rowe II* from this case, (Pls.' Mem. at 10–13; Pls.' Reply at 10–11), nor could they plausibly do so. They try to salvage the claim with allegations of *other* subsequent phone calls between them and Aetna. (*E.g.*, Proposed Am. Compl. ¶¶ 18, 25, 34). The calls, however, are just different versions of benefit verification (or preauthorization) phone calls, not definite offers or promises to pay. (*E.g.*, *id.* ¶ 81 ("03/09/21 Plaintiffs received call from Aetna Nurse name[d] Sara who informed Plaintiffs Aetna approved the surgery at the OON level."; *see also id.* ¶¶ 79–82).

So, the same result follows here: no breach of contract claim exists on the facts alleged in the proposed Amended Complaint.[7]

## 2. Unjust Enrichment

In the absence of an agreement, "a plaintiff may recover in quasi-contract against a defendant who 'received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them.'" *New Spectrum Realty Servs., Inc. v. Nature Co.*, 42 F.3d 773, 777 (2d Cir. 1994) (quoting *Bradkin v. Leverton*, 26 N.Y.2d 192, 197 (1970)). A plaintiff must show that: "(1) [the] defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch*

---

[7] *See also, e.g.*, *Rowe I*, 705 F. Supp. 3d at 202–03; *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, No. 23-CV-8529, 2024 WL 382143, at *2 (S.D.N.Y. Feb. 1, 2024); *Rowe Plastic Surgery of New Jersey, L.L.C.*, 2024 WL 4309230, at *6–*7.

*Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). "The essence of such a claim is that [the defendant] has received money or a benefit at the expense of [the plaintiff]." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quotations omitted). The benefit must be "specific and direct"; "some indirect benefit" is insufficient to qualify as unjust enrichment. *Id.*

Plaintiffs argue that Aetna received "a direct economic benefit" from the surgery because of Aetna's "notorious practice of re-pricing," (Pls.' Mem. at 11–12), in connection with what is commonly referred to as a "shared savings program." These allegations are made in a series of convoluted and confusing paragraphs in the proposed Amended Complaint. (*See* Proposed Am. Compl. ¶¶ 41–63). At one point, Plaintiffs' theory is that Aetna earns additional fees for services rendered by out-of-network providers like Plaintiffs, which are not passed on to Plaintiffs when they are reimbursed for performing the surgery. (*Id.* ¶ 49; Pls.' Reply at 10 ("AETNA . . . had the opportunity to earn a fee, which is in addition to its per member per month fee, for pricing the providers out of network claim.")). At another point, Plaintiffs allege that Aetna uses a third-party "Pricing Vendor," (Proposed Am. Compl. ¶¶ 54–63), to create an artificially depressed reimbursement amount—lower than the amount promised to be paid—a practice Plaintiffs calls "re-pricing." (*Id.* ¶ 39). None of this makes much sense to the Court, since the proposed Amended Complaint and briefs use a shifting set of terminology and conclusory labels. At bottom, however, it is an allegation that Aetna was unjustly enriched at Plaintiffs' expense, because Aetna received fees and profits when it minimized the reimbursement paid to Plaintiffs.

19

Ultimately, however, the claim fails. "[T]o recover under a theory of unjust enrichment, the plaintiff must show that the services were performed '*for the defendant*,' and not at the 'behest of someone other than the defendant.'" *Rowe II*, 2024 WL 4315128, at *4 (quoting *Kagan v. K-Tel Ent., Inc.*, 568 N.Y.S.2d 756, 757 (N.Y. App. Div. 1991)) (emphasis in original). Here, the Plaintiffs provided benefits to the patient, not to Aetna. Aetna "neither [1] benefitted from the Providers' services nor [2] asked the Providers to perform the surgery." *Id.* at *3. "It was the patient, not Aetna, who received the benefit of the Providers' direct services." *Id.*

Plaintiffs nonetheless contend that Aetna's actions constituted "[f]raudulent manipulation of reimbursement rates" and "[u]njust enrichment at the Providers' expense." (Pls.' Reply at 7). But "[i]n the health insurance context, courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds." *Abira Med. Lab'ys, LLC v. Cigna Health & Life Ins. Co.*, No. 24-CV-2837, 2025 WL 1443016, at *2 (2d Cir. May 20, 2025) (quoting *Abira Med. Lab'ys, LLC v. Aetna, Inc.*, No. 24-CV-931, 2025 WL 448443, at *11 (D. Conn. Feb. 10, 2025)) (collecting cases, including *Rowe II*). That is with good reason, because any benefit Aetna obtained from its supposed repricing system is at best an indirect and attenuated one, stemming from the services Plaintiffs rendered to its patient RS. *See also Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money

20

to the insured—which hardly can be called a benefit.").  For these reasons, Plaintiffs'
second cause of action is futile.

### 3. Promissory Estoppel

"The first element of a promissory estoppel claim is a 'clear and unambiguous
promise.'"  *Rowe II*, 2024 WL 4315128, at *4 (quoting *Cyberchron Corp. v. Calldata Sys.
Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995)).  "A promise is not 'clear and unambiguous'
where the allegations are premised on an ambiguity or where the alleged promise is
conditional upon further agreements or negotiations."  *Id.* (citing *Readco, Inc. v. Marine
Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996)).

In the proposed Amended Complaint, Plaintiffs allege, as they did in their first
claim, that Aetna "assured [the Plaintiffs] that it would use the '80% reasonable and
customary' fee schedule to reimburse [them]."  (Proposed Am. Compl. ¶ 76).  However,
as discussed *supra* § B.1, that conversation was not detailed enough to constitute an
offer to pay, and therefore could not be a clear and unambiguous promise to pay, either.
Plaintiffs go on to allege a series of additional conversations that purportedly
demonstrate Aetna had made such a promise.  (*E.g.*, Proposed Am. Compl. ¶¶ 77–82).
But none of these conversations amount to a promise to pay—they involve further
discussions about preauthorization and benefits confirmation.  (*See id.*).  Plaintiffs have
failed to "plead a clear and unambiguous promise that is actionable under existing
law."  *Rowe II*, 2024 WL 4315128, at *4.  The claim for promissory estoppel is therefore
futile.

### 4.  Fraudulent Inducement

The elements of a fraudulent inducement claim are "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages."  *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (quotations omitted).  "A fraudulent inducement claim must be pleaded according to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff 'state with particularity the circumstances constituting fraud or mistake.'"  *Rowe II,* 2024 WL 4315128, at *4 (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 171 (2d Cir. 2015)).  "[A] fraud claim cannot be sustained where the plaintiff is simply using the claim 'as a means of restating what is, in substance, a claim for breach of contract.'"  *Id.* at *5 (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006)).

Plaintiffs argue that their fraudulent inducement claim should survive because Aetna's "representation of reimbursement . . . was a lie," which Aetna made with the intent of not performing.  (Pls.' Mem. at 14–15).  But Plaintiffs rely on the same set of facts as their breach of contract claim to support the fraudulent inducement claim, namely that during the conversations had with Aetna representatives, they "intentionally lied" about the "'80% reasonable and customary' fee schedule." (Proposed Am. Compl. ¶¶ 90–91).  The only difference is that in the breach of contract claim, Plaintiffs allege that this statement amounted to an offer to pay; whereas in the fraudulent inducement claim, Plaintiffs allege that Aetna *intended* to deceive Plaintiffs

with the statement.  (*Compare* Proposed Am. Compl. ¶¶ 14, 18 *with id.* ¶ 90).  Plaintiffs recycle the same underlying fact—Aetna's alleged assurance to pay the 80% reasonable and customary fee—to drive their fraudulent inducement claim.  (*Id.* ¶ 91).  Additional allegations about what may, or may not, have motivated Aetna to do so does not change the core allegation.  Plaintiffs "have repurposed the allegations underlying their breach of contract claim to allege a fraudulent inducement claim.  The Providers allege that Aetna 'intentionally told' the Providers that its 'reimbursement was based upon "80% Reasonable Customary"' [sic] . . . . Instead, they have simply restated their breach of contract claim."  *Rowe II*, 2024 WL 4315128, at *5.  There is no other misrepresentation that Plaintiffs use to support their fraudulent inducement allegations, and the claim is, therefore, futile.

### 5.  Conversion

Plaintiffs' fifth and final claim is for conversion.  Under New York law, "[t]o state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused."  *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (quotations omitted).

"Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Id.* (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006)).  "New York law recognizes an action for conversion of

money, but requires the plaintiff to have 'ownership, possession or control of the money' before its conversion." *Aramony v. United Way of Am.*, 949 F. Supp. 1080, 1086 (S.D.N.Y. 1996) (quoting *Peters Griffin Woodward, Inc., v. WCSC, Inc.*, 88 A.D.2d 883, 884 (1st Dep't 1982)). "Furthermore, under New York law, an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." *Id.* (quotations omitted).

Plaintiffs do not address the conversion claim in their briefs. In the proposed Amended Complaint, Plaintiffs allege a "property interest in the payment for the services they rendered," in the amount of $91,032.12. (Proposed Am. Compl. ¶¶ 106, 108–09). But Plaintiffs do not allege that they had "ownership, possession or control" of the money at any time. Additionally, the conversion claim arises from Aetna's "alleged 'refusal to pay amounts due under the agreements at issue' and thus seeks damages only for the breach of a contract[.]" *Aramony*, 949 F. Supp. at 1086. This claim fails under New York law and is therefore futile.

<u>CONCLUSION</u>

For the reasons explained, the motion to amend is denied. The parties are directed to proceed to summary judgment practice. The Court notes that many of the same reasons that the proposed Amended Complaint is futile render the existing claims in the operative Complaint meritless. As such, Plaintiffs should strongly consider stipulating to dismissal with prejudice, and pursuing any appeal, if appropriate. Should the parties proceed here, each side is limited to 3,500 words in their briefs in support of their motions for summary judgment; 3,500 pages for any opposition; and

24

1,750 words for any reply.  If the parties proceed with summary judgment, the parties

are further directed to submit a proposed briefing schedule in accordance with Judge

Bulsara's Individual Practices (Civil) § VI(C) by July 29, 2025.


SO ORDERED.

*/s/ Sanket J. Bulsara*

SANKET J. BULSARA

United States District Judge


Date:  July 15, 2025

        Central Islip, New York